UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

                                        Case No.  12-13654

SEVENTY-THREE THOUSAND EIGHT
HUNDRED FORTY-FOUR DOLLARS                HON.  GEORGE CARAM STEEH
($73,844.00) IN U.S. CURRENCY;
ONE HUNDRED FIVE DOLLARS (€105.00)
IN EUROS; AND MISCELLANEOUS
ELECTRONIC EQUIPMENT,

                Defendants *in Rem.*

_____/

ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE
CLAIMS AND ANSWERS AS TO ALL CLAIMANTS EXCEPT FOR AGA
CAMAJ AND DETO CAMAJ PURSUANT TO SUPPLEMENTAL RULE G(8)
AND DENYING ENTRY OF JUDGMENT AND FINAL ORDER OF
FORFEITURE AS TO AGA CAMAJ AND DETO CAMAJ [DOC. 31]

     Plaintiff, the United States of America, brings this motion to strike claims and

answers pursuant to Rule G(8) of the Supplemental Rules for Admiralty or Maritime

Claims and Asset Forfeiture Actions ("Supplemental Rules") and for entry of judgment

and final order of forfeiture.  The defendant currency was seized on March 7, 2012

when federal agents executed a search warrant at the home of alleged drug dealer

Paljoka Camaj.  Paljoka Camaj opened the combination safe located in his bedroom for

the agents.  The safe contained the currency at issue in this matter.  The Claimants to

the funds are all family members of Paljoka Camaj, and all but one of the claimants

lived in the home at the time of the seizure.

Rule G(8)(c)(i)(A) of the Supplemental Rules provides that the government may move to strike a claim or answer for failure to answer Rule G(6) interrogatories. Plaintiff alleges that claimants failed to answer the Rule G(6) interrogatories and therefore their claims and answers should be stricken, default judgment should be entered, and a final order of forfeiture should be entered.

On January 13, 2016, pursuant to G(6)(a), plaintiff served claimants with plaintiff's first set of special interrogatories. On February 10, 2016, all claimants except for Drana Camaj filed responses to plaintiff's first set of special interrogatories. In general, claimants contend that they lived in the home, possessed the currency, and stored it directly or indirectly in the family safe. The allegations of the individual claimants will be discussed more specifically below.

The Advisory Committee Notes to Rule G(8)(c)(i)(A) state that a court "should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects." In this case, after the claimants filed responses to the special interrogatories, plaintiff sent a letter to claimants' counsel dated February 29, 2016 highlighting deficiencies in the responses and requesting amended responses as soon as possible. Plaintiff filed its motion to strike one week later on March 7, 2016. Several of the claimants, Mark Camaj, Nikollas Camaj, Mark N. Camaj, and Pjeter Camaj filed supplemental responses on March 30, 2016.

II. Standing

To contest plaintiff's complaint, claimants must have both (1) the Article III standing required for any action brought in federal court and (2) statutory standing under the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). *United States v. One*

*2001 Cadillac Deville Sedan*, 335 F. Supp. 2d 769, 772 (E.D. Mich. 2004).  Plaintiff argues that claimants lack both Article III and statutory standing in this case.

     A.  Article III Standing

In order to establish Article III standing "a claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property."  *United States v. $515,060.42*, 152 F.3d 491, 497 (6th Cir. 1998).  CAFRA defines the term "ownership" as "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest".  18 U.S.C. § 983(d)(6)(A).  Individuals with a general, unsecured interest or those with only a claim against the property or estate of another are explicitly precluded from prevailing against the government in a forfeiture action.  18 U.S.C. § 983(d)(6)(B)(i).  Other classes of individuals who are excluded from the definition of "owner" are bailees, unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized, and nominees who exercise no dominion or control over the property.  18 U.S.C. § 983(d)(6)(B)(ii) and (iii).

Because the danger of false claims in forfeiture proceedings is substantial, courts require more than bald assertions or conclusory allegations of some interest in the property.  *United States v. Thirty-One Thousand Dollars in United States Currency*, 2012 WL 5343350, *4 (E.D. Mich. 2012) (claimant's assertion that defendant currency "belong[s] to him" does not satisfy the burden to prove standing).

State law governs what interest a person has in property under the civil forfeiture statutes.  *United States v. Tarraf*, 725 F. Supp. 2d 625, 628-29 (E.D. Mich. 2010).  If the

court determines that the claimant has a property interest recognized by state law, it determines whether the asserted interest is one that is plausible and recognized under federal forfeiture law.

In Michigan, cash is considered a bearer instrument and "possession of cash is *prima facie* evidence of ownership." *United States v. Currency $11,331*, 482 F. Supp. 2d 873, 881 (E.D. Mich. 2007). The "burden of producing evidence regarding ownership rests upon the person disputing such ownership." *Id.* In this case, the government argues that living in the home does not give claimants a possessory interest in the currency found in a safe in another individual's bedroom of the home. Case law supports standing for a claimant to contest the forfeiture of property found in his own bedroom, *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 500 (6th Cir. 1998), but there is no case law specifically holding that every member of a household is deemed to possess any property found in the house, or that such claimants have standing to make such claim.

The defendant currency was found in Paljoka Camaj's bedroom in a locked safe. Paljoka told agents the money came from two sources – $60,000 was money he collected from members of the Albanian community through his church to be sent to Albania to buy back land that was taken during the political upheavals in the country, and the rest was his savings from his construction business. The law presumes that only Paljoka possessed and owned the defendant currency - a presumption that claimants may try to rebut.

In this case, the burden falls on claimants to rebut that the currency was owned by Paljoka. Claimants maintain that they all lived together in the home as a family and

that the safe was used by everyone in the house.  Claimants contend that the fact that euros were in the safe along with U.S. currency confirms that the safe was used by others beside Paljoka to store money.  Claimants also make assertions to support the conclusion that they had the ability to obtain funds legitimately and not through criminal means.  For example, Aga and Deto collected social security, Nikollas collected social security disability, Pjeter and Mark were employed in the construction business, and Mark N. collected donations for Albania from the church.

What the government claims is lacking are documents, ledgers, or even a theory of how claimants' money was purportedly segregated within the safe.  The government submits a photo of the safe just after it was opened, which shows stacks of currency, without any indication of how it is segregated among all of the claimants.

## B.  Statutory Standing

"Statutory standing is established through strict compliance with Supplemental Rules G(5) and G(6)." *United States v. Vehicle 2007 Mack 600 Dump Truck*, 680 F. Supp. 2d 816, 822 (E.D. Mich. 2010).  Supplemental Rule G(5) provides that a claim must "(A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney designated . . . ."  Supplemental Rule G(6) provides that the government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property.  Rule G(6)(a).  Answers must be served within 21 days after the interrogatories are served.  Rule G(6)(b).

The government contends that claimants have failed to identify the specific property claimed.  They have merely stated an amount of money, without producing

-5-

documents, ledgers or theories of how their exact money was segregated within the safe.  When claimants fail to comply with Rule G(6), the court has authority to strike claims and answers for lack of statutory standing.

III.  Summary of Interrogatory Responses

   A.  Drana Camaj ($4,844)

Drana is the wife of Paljoka.  She is a claimant, but she did not file any response on her own behalf to plaintiff's first set of special interrogatories.  The court STRIKES Drana Camaj's claim for lack of statutory standing because she did not strictly comply with Rule G(6)(b).

   B.  Aga Camaj and Deto Camaj ($20,000 and €105.00)

Aga and Deto are husband and wife, and parents of Paljoka.  They live in the home where the seizure took place six months of the year and travel to Montenegro the other six months of the year.  They were residing at Paljoka's home on the date of the seizure.  These claimants responded to Special Interrogatory No. 2 about the source of the funds they claim as being from social security and other savings, as well as euros from a previous trip to Europe.  Plaintiff argues that claimants' deficient answers to Special Interrogatory No. 4 is relevant to standing.  That interrogatory requests details regarding claimants' physical handling of the currency prior to its seizure.  Claimants responded as follows:

> A. – E.  All physical handling of the funds and euros were handled by
> Claimant and spouse and placed in the safe in the home located at 56029
> Red Cedar Court, Shelby Twp. Michigan 48316 to be used for Claimant
> and spouse's funerals.

Claimants also attach bank statements showing two withdraws – one for $918 and another for $900. The government argues that this is not responsive to the special interrogatory seeking details of claimants physically depositing $20,000 and €105.00 into the safe.

The government is correct in its argument that these claimants did not give any details of their physical handling of the currency they claim to have stored in the safe. However, they do refer to storing euros in the safe, and there was only one safe in the house. The presence of euros in the safe supports the claimants' general position that Aga and Deto Camaj used the safe to store their money.

The court finds that these claimants should be given another opportunity to support their claim to the defendant currency and therefore DENIES the government's motion to strike the claims of Aga and Deto Camaj.

C. Nikollas Camaj ($12,000)

Nikollas Camaj is a minor son of Pljoka and Drana and lived in the home in 2012. He receives social security disability payments. Attached to his Special Interrogatory response, verified by his mother, is a sample disability check from 2012 intended to indicate that "his income, in the form of disability checks and gifts were cashed and the currency was stored in the family safe."

The disability check for $395.54 is attached to suggest that multiple small deposits were made into the safe to make up the $12,000 claimed. The interrogatory response does not identify any single deposit into the safe. Specifically, the response to Special Interrogatory No. 4 states:

     A. – E.  Claimant-minor child's funds were handled at the time of received. Claimant's mother handled these funds for the benefit of the Claimant-minor child.  These funds were placed in the safe by Claimant's mother for use as needed.

Plaintiff primarily takes issue with Nikollas's answer for failing to give detail regarding his handling of the claimed currency, the source of the claimed currency, and where the claimed currency was placed or who it was given to and when.

     Nikollas's supplemental response provides in part:

     B.  I held the currency when I received the funds from the bank or in their home.  C.  Claimant's guardian, mother, held the funds on his behalf in the bank and in their home.  D. She received the funds from the government, or gifts for Claimants.  E.  These funds were placed in the safe by Claimant's mother for use as needed.

     Disability payments are intended to provide for living expenses of the recipient.  It is not reasonable to believe that Nikollas accumulated $12,000.00 in social security disability payments that were not expended on his behalf over the years that he received such payments.  The responses provided by Nikollas do not overcome the presumption that the money in the safe belonged to his father.  The government's motion to strike Nikollas Camaj's claim is GRANTED.

    D. Pjeter Camaj ($25,000)

Pjeter Camaj is the brother of Pljoka and lived in the home in 2012.  Pjeter was employed with PNC Construction and contends that his income is the cash he put in the family safe for storage.  He explains that he withdrew the funds from his business and personal accounts on several occasions and placed them in the safe to be used for personal expenses.  He provides bank statements showing the funds he withdrew to

put in the safe.  The statements appear to show over $25,000 in withdraws prior to the

seizure in 2012.

> Pjeter Camaj's response to Special Interrogatory No. 4 states:
>
> A.  Yes; B. Upon Claimant's withdraw from business and personal accounts, he gave the money to his brother to put in the safe in his home.
>
> C. – E. Claimant first held the funds when he withdrew them from the bank and last held.
>
> Pjeter Camaj's supplemental response provides in part:
>
> B.  Upon Claimant's withdraw of the funds from his business and personal accounts, he gave the money to his brother to put in the safe in his home for safe keeping. . . . E.  Claimant first held the funds when he withdrew them from the bank and last held when the funds were placed in the safe.

Pjeter's responses indicate he gave the claimed currency to Paljoka to put in the

safe.  The government maintains that even if Pjeter can show that he once owned the

defendant currency, once it was transferred from him to Paljoka Camaj, Michigan law

denies claimant the rights of ownership.  The government contends that upon giving

money to Paljoka to put in the safe, Pjeter became an unsecured creditor who does not

have standing to challenge the civil forfeiture of his debtor's property.

Pjeter argues that at the very least a bailment was created when he gave his

money to Paljoka to place in the safe for him.  Claimant contends the bailor is

identifiable and the claimant has demonstrated a legitimate interest in the currency.

However, in order to be regarded as a bailor, the claimant must provide evidence that

he expects the purported cash to be returned in the exact portions as placed in the safe.

*United States v. $26,250.00 in U.S. Currency*, 221 F.3d 1350, *1 (9th Cir. 2000)

(claimant without an expectation that her exact contributions would be returned to her is not properly regarded as a bailor, but instead as an unsecured creditor).

Based on Pjeter's responses to the interrogatories, he appears to be at best an unsecured creditor and therefore does not have standing to bring a claim.  The government's motion to strike Pjeter Camaj's claim is GRANTED.

E.  Mark Camaj ($5,000)

Mark Camaj is the son of Pljoka and Drana Camaj and lived in the home in 2012. He was employed with Cavalier Construction and earned an income that he says constituted the cash he put in the family safe.  In response to Special Interrogatory No. 4, Mark states:

> A.  Yes;  B.  Physically held when withdrawn from Claimant's Chase Bank account;  C. – E.  Claimant first held at his bank when the funds were withdrawn and last held when Claimant physically placed the funds in the safe.

Plaintiff primarily takes issue with Mark's answer to Part B, which asks "When did YOU physically hold the Defendant Currency".  Mark's supplemental response to Part B provides, "I held the currency when I received the funds from Chase bank."

Mark states that he placed the funds in the safe himself, yet despite having a second opportunity to respond to the government's interrogatories, he does not provide any details about how many times he made deposits into the safe, when, or in what amounts.  The court STRIKES Mark Camaj's claim.

F.  Mark N. Camaj ($7,000)

Mark N. Camaj did not live in the home in 2012.  He is a cousin of the other claimants.  He went to the same church as the claimants, where he and his cousin

-10-

Paljoka allegedly collected money from churchgoers to be used to build a new funeral

facility in Montenegro. Mark N. Camaj answered Special Interrogatory No. 4 as follows:

> A.  Claimant personally collected the funds from the donators; B. – E.  The
> funds were in Claimant's possession throughout the fundraising event
> upon collection and counting of funds.  They were then given to Paljoka
> Camaj in his home.  Paljoka Camaj was to send the funds to the funeral
> project committee in Montenegro.

The plaintiff states that Mark N. Camaj failed to answer Part B, which asks "When did

YOU physically hold the Defendant Currency" and Part E, which asks "Where did YOU

place the Defendant Currency after YOU last held the Defendant Currency.  If YOU

gave the Defendant Currency to a person, who did YOU give it to and when."

> Mark N. Camaj's supplemental response provides in part:

> B.  One week before the seizure. . . . E. The funds were in Claimant's
> possession throughout the fundraising event upon collection and counting
> of funds.  They were then given to Paljoka Camaj in his home.  Paljoka
> Camaj was to send the funds to the funeral project committee in
> Montenegro.

> Mark N. Camaj also provided receipts for the donations he claims as the source

of the $7,000 in currency.  Given Paljoka's statement to the police that $60,000 of the

currency in the safe came from donations from members of his church to be sent to

Albania, the court finds that Mark N. Camaj has provided nothing more than details to

support Paljoka's explanation as to the source of some of the currency in the safe.

While this information may be helpful to the government in determining the source of the

funds seized, Mark N. Camaj does not claim that the $7,000 in donations are his funds

at all.  The court GRANTS the government's motion to strike Mark N. Camaj's claim.

IV.  Conclusion

For the reasons stated above, the government's motion to strike claims and

answers is GRANTED as to Drana Camaj, Nikollas Camaj, Pjeter Camaj, Mark Camaj,

and Mark N. Camaj.  The motion to strike the claims of Aga and Deto Camaj is

DENIED.

Dated:  June 7, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 7, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk